CHANCERY.

Case 84.

June 18.

Vancleave's will.

### Williams &c. vs. Vancleave &c.

Error to the Shelby Circuit; HENRY DAVIDGE, Judge.

*Devises.   Vested   remainders.   Contingent   and   lapsed devises.*

Chief Justice BIBB delivered the Opinion of the Court.

BENJAMIN VANCLEAVE died in 1819, having published his last will and testament, bearing date on the 17th October, 1815; which after his death, was duly proved, and admitted to record, in the county court of Shelby. This will and testament is as follows:—

"My first desire is, that my beloved wife, Ruth, and daughter-in-law, Polly Vancleave, jointly possess, use, and occupy the tract of land and plantation whereon I now live, containing one hundred and thirteen acres, during the natural life of my said wife, and after my wife's decease, if my said daughter-in-law shall not have again married, but still lives in her state of widowhood, my desire is, that she have the use of the land aforesaid, until her two children, Elijah and Elvira, shall arrive to the age of twenty one years, and then the said Elijah Vancleave, and his sister Elvira, to have the entire and absolute property thereof; but if it shall so happen, that either of my said grandchildren shall die without issue, the whole of the land to belong to the survivor, and in case both of them should decease without issue; then, and in that case, my said daughter-in-law to have the issue of the land aforesaid during her widowhood; and my special desire is, in case each of my said grandchildren dying without issue, and my said daughter-in-law marrying again, then the land aforesaid to be equally divided among my two daughters, Jane and Sally. *Item!* And my further desire is, that my said wife enjoy every other species of property I possess, during her life; and after her decease, to be equally divided among all my children; and lastly, I do hereby ordain, constitute and appoint my two sons, Aaron and Samuel, executors of this my last will and testament."

In Sept. 1825, the appellees exhibited their bill, as part of the heirs of said Benjamin Vancleave, de-

ceased, against Joel Williams, and his wife Polly, the daughter-in-law mentioned in said will, and Elijah and Elvira her two children, alleging the death of said testator's wife, the marriage of said daughter-in-law, the will and testament aforesaid; alleging, that said Williams and wife were in possession, praying an account and decree against them for the rents and profits of the land so devised to the said daughter-in-law and her children, which had been received since the death of the testator's wife; the bill further asks for possession to be decreed to the complainants; and if it shall appear, that Elijah and Elvira are entitled to an equal portion of the land with the complainants, then that their shares may be set apart and allotted to them, and for general relief.

Williams and wife admit their intermarriage, and state it to have been after the date of the will, and before the death of the testator. Williams states, that, since the death of Mrs. Ruth Vancleave (which took place in the latter part of 1823 or the beginning of the year 1824,) he has, as guardian of the infant children, Elijah and Elvira, rented out the land, but denies that the complainants have any interest in the land, either by descent or devise.

The decree is against the defendants, for the rents of the year 1825; that they deliver up the bonds and notes for the rents of 1826; that they deliver possession of the tract of land to the complainants by the first day of January, 1827, and on failure, that a writ of *habere facias possessionem* be issued by the clerk.

To this the defendants below prosecute this writ of error.

It is not to be seen distinctly what quantum of interst in this tract of land is claimed for the complainants by their bill; whether that said daughter-in-law, Polly, by her marriage, had forfeited her particular estate only, so that the complainants were entitled until the two grandchildren arrived at the age of twenty one years, or that she had defeated, as well the remainder, after the life estate, devised

*Margin notes:*

WILLIAMS &c. vs. VANCLEAVE &c.

Allegations and prayer of the bill.

Answer of Williams and wife.

Decree of the circuit court.

WILLIAMS
&c.
vs.
VANCLEAVE
&c.

Decree reversed.

Question stated.

In this case—devise of the mansion farm to testator's wife and his son's widow, for

to the grandchildren, as the contingent devise to Jane and Sally. The decree is general in behalf of the complainants, and tends in no degree to admit any right in the defendants, Elijah and Elvira, present, or to come.

Upon what principle the decree is based, so as, in case of intestacy, either until the infants, Elijah and Elvira, shall attain their ages of twenty one years, or of the whole estate in remainder, after the death of Mrs. Ruth Vancleave, and yet to exclude totally, those two grandchildren from all interest in the land, is not perceived. The decree must be reversed; but the question is what direction this court shall give, consequent upon that reversal.

Admitting all the facts as stated in the bill, touching the events which have happened since the date of the will, with the help of the additional facts supplied by the answer, and the question arises, whether the complainants can have any interest in this tract of land, living the grandchildren, Elvira and Elijah, mentioned in the said will.

The question is, what interest and estate did Elijah and Elvira take in this tract of land? Was their interest in the remainder after the death of the testator's wife, Mrs. Ruth Vancleave, contingent upon the event that their mother should have remained a widow, so as to have been totally defeated by her second marriage? Or if not so contingent, was their interest to be postponed as to the possession and enjoyment until their arrival at the age of twenty one years, so that in the interim the interest descended to the heirs at law.

Either of these constructions are against the intention of the testator. He did not intend to die intestate, as to any portion of his estate, in this particular tract.

Being the owner in fee, the testator gave to his wife and daughter-in-law, Polly, a joint estate for the life of his wife, with remainder to his two grandchildren Elijah and Elvira.

Out of this remainder, however, he carved an interest for his daughter-in-law, contingent upon the

event of her not having again married at the death of his wife, but still lived in her state of widowhood. It was the use devised to the daughter-in-law which was contingent upon her celibacy, and even that could not endure longer than the arrival of her children to their full age. But that contingency was not annexed to the remainder devised to the grandchildren. It was the exception out of the remainder to them which was, or was not, to be made, as the event should turn out.

Suppose the daughter-in-law had died, not having again married, living the testator's wife, who, (having survived her husband and daughter-in-law) had lived until after her two grandchildren, Elijah and Elvira, had attained their ages of twenty one years, and then the said grandmother had died; would it have consisted with the intent of the testator, that the grandchildren should, in such events, (possible at the date of his will, and which could not be foreseen,) be deprived of the remainder? This question is answered by that part of his will, in which he says, "and my special desire is, in case each of my said grandchildren dying without issue, and my said daughter-in-law marrying again, then the land aforesaid to be equally divided among my two daughters, Jane and Sally." This dying without issue, was the only event which the testator looked upon as giving this land to his other children.

The testator manifestly appropriated, in his mind and by his last will, this land to the use of his wife and daughter-in-law, during the life of his wife, and after her death to the permanent use and inheritance of his two grandchildren and their issue. Two principal objects in his will cannot be misunderstood: to provide certainly a house and home for his wife and his daughter-in-law during his wife's life; and after her death, to provide permanently for his two grandchildren, Elijah and Elvira, who were infants, and had lost their father. His wife might possibly have lived until after his two grandchildren attained their full age; he could not therefore have devised the land to them absolutely, before, or as soon as they attained full age, without

*Marginal note:*

WILLIAMS &c.
vs.
VANCLEAVE &c.

the wife's life, and after her death, if the daughter-in-law shall remain a widow, to her until her two children attain full age, then to them in fee—if the daughter-in-law marry before the wife die, the estate vests in the grandchildren immediately on the wife's death.

incurring the risk of depriving his wife of hei home, or of subjecting her to her cradle. Therefore, the devise to the grandchildren, is after his wife's death. The provision for his daughter-in-law, after the death of his wife, was but a minor consideration compared with his desire to provide effectually for his fatherless grandchildren.

To the natural affections of the grandmother and the mother combined, the testator was willing to confide the support of his two grandchildren; he doubted not their apportionment of the issues and profits of the land, and division of them with his grand children in the life time of his wife. But after the death of his wife, he was not willing to risk the support of his grandchildren with a step-father. If she married again, she having the support of her husband, would less need the support from the estate of the testator, but such change in her condition would materially diminish the civil powers of his daughter-in-law to appropriate her means and estate to the support and education of his grandchildren Therefore the testator, after the death of his wife, annexed a condition, to his daughter-in-law's further use and enjoyment of the land, that she lives in her state of widowhood.

By devising the use of the land to the mother, the natural guardian of the children, during their minority, provided she still lived in her state of widowhood, the testator was but accomplishing the better his provision for his grandchildren; they could not manage it themselves; the mother could, for herself and them. The testator very naturally considered the use of the land devised to a widowed daughter-in-law, as substantially devised to the use of her children also, during their minority, whilst natural affection and legal obligation combined to impose the duty of support and maintenance. And therefore, the testator said, "And after my wife's decease, if my said daughter-in-law shall not have again married, but still lives in her state of widowhood, my desire is, that she have the use of the land aforesaid until her two children, Elijah and Elvira, shall arrive to the age of twenty one

years, and then the said Elijah Vancleave and his
sister Elvira, to have the entire and absolute proper-
ty thereof." "Entire" signifies undivided, unmin-
gled, complete in all its parts; "absolute" means free,
not controlled by others. These expressions "entire
and absolute property thereof," connected with the
minority of the children and the condition that the
mother had not married again, but still lives in her
state of widowhood, by necessary implication, con-
vince the mind that the testator viewed the use of
the land given to the mother as mingled with the use
and enjoyment of the grandchildren for the time,
and that he imposed the condition of celibacy for
the benefit of the children, not for their detriment,
to enlarge and not to defeat their estate. To sup-
pose that the testator, by the annexation of this con-
dition to the use devised to his daughter-in-law, in-
tended to deprive his two grandchildren of support
during their minority, because their mother should
happen to marry and thereby subject them to the
control of a step-father; that the grandfather in-
tended to deprive them of support when they
would most need it, would be a forced and unnatur-
al construction of the will.

All the provisions by the testator, relating to this
tract of land, are comprized in one long sentence,
which, abreviated, by the omission of so much as
relates to the provision contingently given to the
daughter-in-law, will stand thus:

"My first desire is, that my beloved wife, Ruth,
and daughter-in-law, Polly Vancleave, jointly pos-
sess, use and occupy the tract of land and plantation
whereon I now live, containing one hundred and
thirteen acres, during the natural life of my said
wife, and then the said Elijah Vancleave and his
sister Elvira, to have the entire and absolute proper-
ty thereof."

This is the true reading of the will when applied
to the state of facts which have transpired since its
date.

That the interest of the daughter-in-law, when
forfeited by her marriage, lapsed for the benefit of

WILLIAMS
&c.
vs.
VANCLEAVE
&c.

Substance of
the devise, as
applicable to
the facts since
occurred.

WILLIAMS
&c.
vs.
VANCLEAVE
&c.

the remainder, devised to the grandchildren; that the remainder to them was vested immediately upon the death of the testator, and did not depend upon the contingency of their mother's remaining unmarried, are propositions to be collected from the will. That such was the testator's intention is a necessary implication, strongly inculcated by the words which he has used. This construction is fortified by analogy to many adjudged cases. Boraston's case, 3 Co. 19; Taylor vs. Biddal, 2 Mod. 289; Hayward vs. Whitley, 1 Burr. 228, and Tompkins and Tomkins, cited in that case by lord Mansfield; Dugard vs. Mansfield, Equ. ca. ab. 195, pl. 4; and many modern cases, which in this court must be nameless.

Mandate.

It is the opinion of this court, that the complainants, claiming as the heirs at law, of Benjamin Vancleave, the testator, a supposed undevised portion of the estate in the home plantation and tract of land, have misinterpreted the will, and that, living the defendants, Elijah and Elvira, the complainants have no right to the said land, or the rents and profits. It is therefore ordered and decreed, that the said decree of the circuit court be reversed, and that the case be remanded, with directions to dismiss the bill with costs.

Plaintiffs in this court to be paid their costs.

*Mayes* for plaintiffs; *Denny* for defendants.